DECISION AND JUDGMENT ENTRY
{¶ 1} Michael and Tanya Myers appeal a judgment of the Athens County Court of Common Pleas, Juvenile Division, granting permanent custody of their four children to Athens County Children Services (ACCS). The Myers contend the court erred in concluding it was in the children's best interest to grant permanent custody to ACCS. Because there is some competent, credible evidence supporting the court's finding, we disagree. Accordingly, we affirm the judgment of the trial court.
 {¶ 2} This case returns to us following our remand to the trial court for entry of new findings of fact and conclusions of law. See In re Myers, Athens App. No. 02CA50, 2003-Ohio-2776, at ¶ 27. A brief factual history of the case follows.
 {¶ 3} Michael and Tanya Myers are the natural parents of five children, Michael III (DOB 8/7/92), Zachary (DOB 4/27/94), Donna (DOB 10/3/98), Justin (DOB 2/27/00), and Thomas (DOB 12/22/00). In April of 2000, ACCS took Michael, Zachary, Donna, and Justin into custody under an emergency custody order. The next day, ACCS filed four individual complaints alleging that the children were neglected and/or dependent. Ultimately, ACCS and the Myers reached an agreement whereby the Myers would admit the children were dependent and in exchange, the allegations of neglect would be dismissed. Under the agreement, ACCS received temporary custody of the children. In June 2000, ACCS returned the children to the Myers' custody but retained a six-month protective supervision order. Four months later, ACCS removed the children from the home, regaining temporary custody.
 {¶ 4} In April 2002, ACCS filed a motion to modify disposition of Michael, Zachary, Donna, and Justin from temporary custody to permanent custody.[1] Following a four-day hearing, the trial court granted permanent custody of the children to ACCS. The Myers then requested findings of fact and conclusions of law. After the trial court filed its findings of fact and conclusions of law, the Myers appealed. We held that when a party requests findings of fact and conclusions of law, the trial court must set forth the specific factual findings that correlate to the statutory factors contained in R.C. 2151.414(D).In re Myers, Athens App. No. 02CA50, 2003-Ohio-2776, at ¶ 23. Because the trial court's entry lacked factual findings relating to two of the statutory factors, we remanded the case for new findings of fact and conclusions of law. Id. After the trial court complied with our remand, the Myers once again appealed raising the following assignments of error: "ASSIGNMENT OF ERROR NO. 1 — The trial court's findings of fact were contrary to the manifest weight of the evidence and were not supported by clear and convincing evidence. ASSIGNMENT OF ERROR NO. 2 — The trial court's finding that permanent custody was in the best interest of the children is not supported by clear and convincing evidence and is contrary to the manifest weight of the evidence."
 {¶ 5} In their first assignment of error, the Myers challenge the trial court's finding that they continuously and repeatedly failed to utilize ACCS resources to remedy the conditions that caused the children's removal. This finding is included in the trial court's reasonable efforts finding under R.C. 2151.419(A). Under that statute, at any hearing where a child is committed to the permanent custody of an agency, the trial court must determine whether the agency made reasonable efforts to return the child home. In re Norris, Athens App. Nos. 00CA38, 00CA41, 2000-Ohio-2038, 2000-Ohio-2039. However, the focus of R.C.2151.419(A) is on the agency's conduct, not that of the parents, i.e., whether the agency made reasonable efforts to prevent the children's removal, not whether the parent's utilized agency resources to remedy the conditions that caused the children's removal. Compare R.C. 2151.419(A) and R.C. 2151.414(E)(1). SeeIn re Myers, 2003-Ohio-2776, at ¶ 18. Therefore, we previously determined that it would be more appropriate to address this finding in our review of the R.C. 2151.414(D) best interest factors, rather than in relation to R.C. 2151.419(A). In reMyers, supra. Accordingly, we address this assignment of error together with the Myers' second assignment of error. There, the Myers challenge the court's finding that it is in the children's best interest to grant permanent custody to ACCS.
 {¶ 6} An award of permanent custody must be supported by clear and convincing evidence. In re Hiatt (1993),86 Ohio App.3d 716, 725, 621 N.E.2d 1222. "Clear and convincing evidence" is evidence that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. See Cincinnati Bar Assn v. Massengale (1991),58 Ohio St.3d 121, 122, 568 N.E.2d 1222; In re Meyer (1994),98 Ohio App.3d 189, 195, 648 N.E.2d 52. It is considered a higher degree of proof than a mere "preponderance of the evidence," the standard generally utilized in civil cases, but is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. See Landsowne v. Beacon Journal Pub. Co. (1987),32 Ohio St.3d 176, 180, 512 N.E.2d 979, quoting Cross v. Ledford
(1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 7} When reviewing an order terminating parental rights, an appellate court must examine the record to determine whether the trier of fact had before it sufficient evidence to satisfy the clear and convincing standard. See In re Large, Hocking App. Nos. 03CA9, 03CA10, 2003-Ohio-5275; In re Lewis, Athens App. No. 03CA12, 2003-Ohio-5262, at ¶ 14. If the record contains some competent, credible evidence going to all the essential elements of the case, an appellate court may not reverse the trial court's judgment. See State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54. Moreover, we will not substitute our judgment for that of the trial court when there exists competent and credible evidence supporting the trial court's findings and decision. SeeId. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. We give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 8} A parent's right to raise his or her child is an "essential" and "basic civil right". In re Murray (1990),52 Ohio St.3d 155, 157, 556 N.E.2d 1169, quoting Stanley v.Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208,31 L.Ed.2d 551. Moreover, a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child. In reMurray, citing Santosky v. Kramer (1982), 455 U.S. 745, 753,102 S.Ct. 1388, 71 L.Ed.2d 599. A parent's rights, however, are not absolute. While termination of parental rights is an alternative of last resort, it is authorized when necessary for the welfare of the child. In re Cunningham (1979),59 Ohio St.2d 100, 105, 391 N.E.2d 1034; In re Wise (1994),96 Ohio App.3d 619, 624, 645 N.E.2d 812. As the Supreme Court of Ohio stated: "`* * * the natural rights of a parent are * * * always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" In reCunningham, quoting In re R.J.C. (Fla.App. 1974),300 So.2d 54, 58.
 {¶ 9} Absent certain statutory exceptions, a public service agency or private child placing agency is required to file a motion requesting permanent custody of a child "if the child has been in the temporary custody of one or more public service agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *." R.C.2151.413(D)(1). A child is considered to have entered the temporary custody of an agency "on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from the home." R.C.2151.413(D)(1).
 {¶ 10} Under R.C. 2151.414(B)(1)(d), a trial court may grant permanent custody to the agency if it finds, by clear and convincing evidence, (1) that the child's best interest would be served by an award of permanent custody and (2) that the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period. When granting permanent custody under R.C. 2151.414(B)(1)(d), the trial court need not find that the child cannot or should not be placed with either parent within a reasonable time since such a finding is implicit in the time frame provided in the statute.In re Large, supra. See, also In re Riley, Washington App. No. 03CA16, 2003-Ohio-4108; In re Decker, Athens App. No. 00CA039, 2001-Ohio-2380.
 {¶ 11} The Myers do not dispute that Michael, Zachary, Donna, and Justin have been in the temporary custody of ACCS for twelve or more months of a consecutive twenty-two month period. They argue, however, that granting permanent custody to ACCS is not in the children's best interest.
 {¶ 12} R.C. 2151.414(D) sets forth specific factors the court must consider in determining whether the child's best interest would be served by granting the motion for permanent custody. These factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. The statute also directs the court to consider whether any of the factors in R.C.2151.414(E)(7) through (11) apply in relation to the parents and child. See R.C. 2151.414(D)(5). However, none of those factors are present in this case. See R.C. 2151.414(D).
 {¶ 13} Concerning the children's interaction and interrelationship with their parents, siblings, relatives, and foster caregivers, the evidence indicates that the Myers love their children and vice versa. The Myers testified that they are bonded with the children and the children are bonded with them, although Mr. Myers indicated that Justin is probably more bonded with his foster parents since he has been with them longer. Mandy Reuter, an ACCS caseworker, confirmed that Michael and Donna are bonded with their parents. However, she indicated that Zachary has some conflicts in his relationship with his parents. She also indicated that Justin is not as bonded with his parents as the other children.
 {¶ 14} Although the Myers love their children, the evidence indicates that they do not interact appropriately with the children. Mandy Reuter testified that the Myers have a "very difficult" time controlling all five of their children at the same time. She testified that during visits, she observed a pattern of poor supervision and lack of discipline. For example, she indicated that during one visit, Zachary became mad and rode off on his bike. For approximately ten minutes, the Myers did not know where he was. Eventually, however, Mrs. Myers found him at the local park. During another monitored visit, an incident of inappropriate sexual behavior occurred between two of the children while the parents were downstairs. Regarding the lack of discipline, Ms. Reuter testified that the Myers had a difficult time following through with any discipline strategies they were taught. Mary Ann Linscott, the Myers' parent mentor, also indicated that the Myers had trouble following through with discipline.
 {¶ 15} The evidence also indicates that the children interact well together, although there is conflict between Michael and Zachary. Ms. Reuter testified that there is a very strong bond between Donna and Justin. She also indicated that there is a bond between Michael and the three youngest children, i.e., Donna, Justin, and Thomas. As for Zachary, Ms. Reuter testified that although there is not a strong bond between Michael and Zachary, their relationship has improved. Deedra Barrows, who met Mrs. Myers through her volunteer Christian work, testified that she was present during three or four visits. According to her testimony, the children played well together. However, she testified that Zachary tried to isolate himself from the other children and did not seem to interact as well with the rest of the children.
 {¶ 16} Finally, the evidence indicates that the children have positive relationships with their foster caregivers. Ms. Reuter testified that Donna and Justin are "very bonded" to their foster parents. Teresa Kemper, Zachary's counselor, testified that Zachary "really gets along well" with his foster mom. And Michael's foster mother testified that they have a close relationship. Moreover, the evidence indicates that the children's behavior has improved significantly while in foster care.
 {¶ 17} After removing the children from their parents' custody the second time, ACCS placed the children in Shirley McMillan's home. Mrs. McMillan testified that Donna and Justin were "pretty wild" in the beginning. However, she testified that they have calmed down a lot and "don't have the meanness in them like that they did." As for Michael and Zachary, Mrs. McMillan testified that they exhibited very aggressive behaviors. According to Mrs. McMillan, she asked that Michael and Zachary be removed from her home because of their behavior.
 {¶ 18} After removing Michael and Zachary from Mrs. McMillan's home, ACCS placed them with Carol Stevens.[2]
Ms. Stevens testified that when Zachary first came to live with her, he would tell lies and steal items from the store when she took him shopping. She also testified that Zachary was unable to read or write when he came to live with her. According to her testimony, Zachary's behavior and academic performance has improved since being in foster care. However, she testified that Zachary acts out and has a difficult time both before and after visits with his parents. Additionally, Mrs. Linscott, who had an opportunity to observe Zachary both in his foster home and during visits with his parents, testified that Zachary is more agitated and aggressive when he's at home with his parents and siblings.
 {¶ 19} As for Michael, Ms. Stevens testified that she asked ACCS to remove him from her home in July 2001. She testified that he was aggressive, violent, and physically abusive. She indicated that Michael threatened to kill her and even assaulted her on one occasion. In addition, Ms. Stevens testified that Michael was sexually obsessed. She indicated that Michael would put his hands on the girls at school and was constantly placing his hands on Zachary's penis. She also indicated that Michael attempted to grab her breasts.
 {¶ 20} In July 2001, ACCS placed Michael in the home of Sandy Brown. Mrs. Brown testified that when Michael first came into her care, he was "in pretty bad shape". She testified that he liked to fight and was "a hard kid to handle". However, she indicated that his behavior has improved significantly since being in her home. Whereas she used to get calls from the school "a couple of times a week" about Michael's behavior, she no longer receives such calls. Additionally, she testified that when he first came to her home, Michael was receiving C's and D's in school. The last two grading periods, however, Michael was on the honor roll.
 {¶ 21} Regarding the second factor, the children's wishes, the guardian ad litem recommended that permanent custody be granted to ACCS. However, the court also interviewed Michael, Zachary, and Donna about their wishes. During the interviews, all three children stated that they missed their parents. Both Michael and Donna indicated that they wanted to go home, but Zachary indicated that he was "mixed up". He stated that when he is with his parents he wants to return home but when he is with his foster mother he wants to stay there.
 {¶ 22} Looking at the third factor, the custodial history of the children, the record indicates that the children have been in the temporary custody of ACCS for twelve or more months of a consecutive twenty-two month period. In fact, at the time of the hearing, the children had been in the temporary custody of ACCS for seventeen consecutive months. Moreover, ACCS attempted to return the children to their parents' custody at one point, but had to remove them again four months later.
 {¶ 23} The Myers contend the court failed to consider the children's full custodial history because it failed to consider the different foster homes that the children have been moved to. However, the court's entry indicates that it considered the foster homes in which the children have lived. The court's entry specifically states: "Refer to the statements under the [R.C.2151.414(D)(1)] factor for additional custodial history." In its findings under the R.C. 2151.414(D)(1) factor, the court discusses the different foster homes the children have been in since being removed from their parents.
 {¶ 24} The fourth factor the court must consider is the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 {¶ 25} When the children returned to foster care after the failed attempt at reunification, they showed signs of neglect. Mrs. McMillan testified that when the children were placed in her home, they had head lice, were dirty, and Justin had a rash that required medical treatment. Ms. Stevens testified that when Zachary came to live with her, he had serious dental problems that required surgery, a "lazy eye" that required treatment, a penile birth defect that required surgery, and ulcers. In addition, the evidence indicates that the children, especially Michael, had behavioral problems.
 {¶ 26} Teresa Kemper, Michael and Zachary's counselor, testified that both children are in counseling to deal with issues related to the neglect they suffered before being placed in foster care. She testified that Zachary suffers from post traumatic stress disorder and rumination disorder, which results in Zachary regurgitating and chewing previously swallowed food. She indicated that Michael suffers from attention deficit hyperactivity disorder, nocturnal enuresis (bed wetting), post traumatic stress disorder, and reactive attachment disorder. She explained that reactive attachment disorder is a condition where, for whatever reason, the bond between a parent and child is not as solid as it should be. Ms. Kemper testified that both boys' condition has improved since they have been in counseling. However, she indicated that both boys continue to require counseling.
 {¶ 27} During her testimony, Mandy Reuter acknowledged that the Myers love their children. She indicated, however, that the Myers have been noncompliant when it comes to doing what is required to meet the children's basic needs. The guardian ad litem noted that the children show strong affection for each other and their parents, and that the Myers show affection for the children. However, he indicated that the Myers lack the motivation and/or ability to achieve constantly appropriate parental behavior. Mrs. Linscott testified that she questions the Myers' current ability to care for their children. She indicated that she still has concerns in the area of safety and feels "that is very lacking." She also indicated that while the Myers agreed with the parenting concepts and techniques she taught them, they failed to implement those concepts and techniques.
 {¶ 28} Moreover, the record indicates that Mr. Myers is unable to maintain employment with which to support his family. Over the past two years, Mr. Myers has worked a series of part-time jobs. According to the evidence, Mr. Myers either quit each job after a short period of time or was fired due to absenteeism. During the first day of the hearing, Mr. Myers testified that he was currently working at Kmart. However, by the final day of the hearing, he had been fired for missing too many days of work.
 {¶ 29} In addition, the Myers were on their third sanction from the Ohio Department of Job Family Services at the time of the hearing. Thus, they were receiving neither cash assistance nor food stamps. Lisa Radford, a social program coordinator, testified that the Myers were required to work a combined total of thirty-five hours a week to remain eligible for state assistance. She further indicated that the Myers' visitation with their children and their counseling sessions counted towards the thirty-five hours. However, the Myers failed to fulfill the work requirements and were sanctioned.
 {¶ 30} The record also indicates that the Myers have no realistic plan for supporting their children should the children be returned to them. Mandy Reuter testified that the Myers' current employment is not sufficient to support Michael, Zachary, Donna, and Justin. She testified that the family's current budget is sufficient to support the three people presently in the home, i.e., Mr. Myers, Mrs. Myers, and Thomas. During her testimony, Mrs. Myers indicated that they are "perfectly capable of caring for three people with our employment." When asked how they were going to care for the rest of the children, Mrs. Myers responded: "Mm, as far as I understand through Job and Family Services they are still eligible for food stamps." When asked how he would support the children financially, Mr. Myers indicated that family and friends would help him out. He then expressed a hope that he would get one of the two jobs that he had applied for and indicated that if necessary, he would take both jobs. However, Mr. Myers has shown no inclination to work two jobs in the past. Mr. Myers has worked part-time jobs for the past two years, and there is no evidence that he attempted to supplement his income by taking a second job.
 {¶ 31} The Myers have also demonstrated an unwillingness to properly budget the money they do have. At the hearing, Mrs. Myers testified that they had recently signed a lease for rental furniture. She also testified that they pay for Internet service through American Online. Additionally, their monthly budget includes $70.00 for tobacco. At a recent visit with the children, however, the Myers did not have any food to feed the children.
 {¶ 32} Moreover, the evidence indicates that Mrs. Myers has failed to follow through with court-ordered counseling. Although the court first ordered Mrs. Myers to attend counseling almost two years before the permanent custody hearing, she did not begin attending counseling until six months prior to the hearing. In addition, Mrs. Myers testified that she stopped attending counseling one month before the hearing. Vicki Burks, Mrs. Myers' counselor, testified that Mrs. Myers attendance at counseling was good until February 2002. She testified that in February, Mrs. Myers cancelled all of her sessions and that after February, Mrs. Myers' attendance became erratic. Ms. Burks testified that the last time Mrs. Myers attended counseling was May 22, 2002, two months prior to the permanent custody hearing.
 {¶ 33} Although Ms. Burks testified that Mrs. Myers has made progress in her counseling, the evidence indicates that Mrs. Myers is still unable to control her anger. Recently, she got into an argument with the assistant manager of Big Bear while her children were present. During her last visit with the children, Mrs. Myers shouted at the caseworker because the caseworker had not brought food for the children. The incident upset Zachary so much that he began vomiting and had to be returned to his foster home.
 {¶ 34} As for Mr. Myers, the evidence indicates that he too has failed to follow through with the court-ordered counseling. Mr. Myers acknowledged that he did not attend counseling sessions in the month before the permanent custody hearing. Jenny Byers testified that she counseled Mr. Myers for his substance abuse problem from April 2001 until July 2001. In that time, Mr. Myers attended only four of the eight scheduled sessions. Additionally, Ms. Byers recommended that Mr. Myers attend alcoholics anonymous or narcotics anonymous meetings. However, she indicated that to her knowledge, he did not attend any meetings. Inga Detweiler, a counselor at Health Recovery Services (HRS), testified that she began seeing Mr. Myers in January 2002, after his case was transferred to her from another HRS counselor. Ms. Detweiler testified that during his time with her, Mr. Myers attended only fifteen of the twenty-seven group sessions and only two of the five individual sessions. She indicated that Mr. Myers stopped attending counseling May 21, 2002.
 {¶ 35} Mr. Myers takes issue with the trial court's finding that he has continued to use marijuana. Mr. Myers argues that the court could have made such a finding only if it relied on a preliminary unconfirmed test result.
 {¶ 36} Prior to the permanent custody hearing, ACCS filed with the court test results from a drug screen taken July 12, 2002. The report indicated that Mr. Myers tested positive for marijuana. Mr. Myers challenges the validity of the report, indicating that it specifically states it is a preliminary, unconfirmed report. However, even if we ignore the report, Mr. Myers acknowledged that he smoked marijuana in February 2002, only five months before the permanent custody hearing. Thus, Mr. Myers' own testimony supports the court's finding that he continued to use marijuana. Moreover, Mrs. Myers testified that before Mr. Myers used the marijuana in February, she warned him about the possible consequences of his act. She testified that he smoked the marijuana anyway.
 {¶ 37} The evidence indicates that Mr. Myers has made progress towards overcoming his cannabis dependence. Inga Detweiler testified that during his time with HRS, Mr. Myers took ten separate drug tests. She testified that while he tested positive in March 2002, the remainder of his tests came back clean. However, by Mr. Myers' own admission, he smoked marijuana in February despite court orders to the contrary. It's not so much that Mr. Myers' marijuana use standing alone is a cause for concern. But rather, what it represents, namely, an unwillingness to do what is necessary to get his children back, is significant.
 {¶ 38} This is a close case and we struggled with it. It is clear that the Myers love their children. It is also clear that the children love their parents and wish to be reunited with them. We are tempted to hope that with more time, the Myers would demonstrate a willingness to provide a safe and stable environment for their children. However, the children have already been in the temporary custody of ACCS for over seventeen months, and the Myers have yet to demonstrate such a willingness. While they have made progress in some areas, such as obtaining adequate housing and completing parenting classes, they have fallen far short in others.
 {¶ 39} Moreover, while we easily could have decided this case differently, it is not our place to substitute our judgment for that of the trial court. Because the record contains some competent, credible evidence to support the court's finding that it is in the children's best interest for permanent custody to be granted to ACCS, we must affirm the judgment of the trial court. Accordingly, the Myers' assignments of error are overruled.
Judgment Affirmed.
Kline, P.J. Abele, J., concur in Judgment and Opinion.
[1] Following Thomas's birth, ACCS filed a complaint alleging that he was a neglected and dependent child. In the complaint, ACCS sought a protective supervision order. In April 2001, the court adjudicated Thomas a dependent child and granted ACCS a one-year protective supervision order. At the time of the permanent custody hearing, Thomas remained in the Myers' custody.
[2] Due to a malfunction, the tape recorder failed to record Ms. Steven's testimony. Thus, the parties' submitted an App.R. 9(C) statement of the evidence detailing Ms. Steven's testimony. See In re Myers, Athens App. No. 02CA50, 2003-Ohio-2776.