OPINION *Page 2 
{¶ 1} Appellant-mother Linda Coone appeals the April 13, 2007 Judgment Entry of the Ashland County Court of Common Pleas, Juvenile Division, which terminated her parental rights, responsibilities and obligations with respect to her son, Brandon Coone, and granted permanent custody of the child to appellee Ashland County Department of Job Family Services("ACDJFS").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 24, 2003, the Ashland County Department of Job and Family Service's (ACDJFS) filed a complaint seeking emergency and temporary legal custody of Brandon Coone (D.O.B. 07-12-2001). The complaint alleged that the child was a neglected/dependent child under Ohio Revised Code §§ 2151.03 (A) (2) and 2151.04 (A) and (C). The court held a shelter hearing and gave ACDJFS temporary custody of the child.
 {¶ 3} The Ashland County Sheriff's office had responded to a domestic violence call from the residence. The deputies called ACDJFS to remove the child from the home. The investigator who removed the child said the house was extremely cluttered, smelled of animal urine, had animal feces on the floor, had a toddler mattress in the living room that was covered with food or feces, and contained many other unsafe conditions. (July 15, 2005 Hearing Transcript at 18). [Hereinafter "July Transcript"]. In addition, the appellant was hostile, refused to provide clothing for the child, and appeared more concerned about herself than the child. Id. at 29. *Page 3 
 {¶ 4} After removing the child, ACDJFS filed a case plan with the court on December 24, 2003, which was later amended to incorporate other concerns. The Case Plans were reviewed with, and signed by, the parents of the child.
 {¶ 5} The first Case Plan was filed on December 24, 2003. The concerns as specifically noted in that Case Plan included the following: 1). the child had developmental delays; 2). chronic unsatisfactory care of pets within the home; 3). the father inappropriately handles stress through anger; 4). the unsatisfactory home environment; 5). the parents' marital relationship was stressed; 6). appellant had emotional/mental health issues; and 7). appellant was unemployed.
 {¶ 6} The Case Plan requirements, including those directed to appellant, required the following: 1). Brandon was to receive services for his special needs, including working with the Early Intervention Program and attending Dale-Roy Preschool; 2). no pets within the home; 3). Mr. Coone was to complete anger management; 4). the living environment of Mr. and Mrs. Coone would meet all safety and health needs of the child; 5). Mr. and Mrs. Coone were to participate in and successfully complete marital counseling; 6). appellant was to receive a psychological evaluation and follow through with appropriate counseling; and 7). appellant was to be gainfully employed.
 {¶ 7} An amendment to the Case Plan required appellant to join and participate in the mother's group at Appleseed Community Mental Health Center.
 {¶ 8} Subsequently, the Case Plan was again amended to add the following additional concerns: 1). the child has behavioral outbursts around visitation times; 2). *Page 4 
neither of the parents had a stable residence; and 3). the parents lacked basic parenting skills.
 {¶ 9} Because of the new concerns, the Case Plan was amended to include the following requirements: 1). Brandon was to participate in appropriate counseling; 2). each of the parents was to secure and maintain a stable residence; and 3). the parents were to complete parenting education.
 {¶ 10} The case continued until December 21, 2004, when ACDJFS filed a motion for permanent custody. The court held three hearings on the motion, which occurred on July 15, 2005, August 18, 2005, and December 15, 2005.
 {¶ 11} The evidence adduced during these hearings established that appellant did participate in counseling, which was designed to address areas of her behavior, her decision-making and depression. The evidence established that appellant did not attend counseling regularly and missed many scheduled sessions.
 {¶ 12} Appellant was unable to maintain her home to meet the safety and health needs of the child. ACDJFS visited appellant's residence in May 2005. According to the caseworker's testimony, she could not walk through the living room, items were piled on the kitchen stove, dishes were sitting in dirty water, medications and cleaning supplies were sitting on the counters, and the apartment-smelled of cat urine. [August Transcript at 125]. When the case worker returned in June 2005, the apartment had no living room furniture, items were still on the stove, dirty dishes and food was sitting on the counters, the toilet was not flushed, a hairdryer was plugged into an outlet and sitting in reach of a child, and glass items were on the floor. [Id. at 126-29]. The last visit by the caseworker in July 2005 showed that appellant had cleaned very little. The apartment was still *Page 5 
cluttered, the sink was full of dishes and food, and medication was sitting on the counter. [Id. at 9]. According to the caseworker, the apartment was unsafe for a four-year-old child. [Id. at 16].
 {¶ 13} Appellant did not successfully complete the martial counseling, and the child's father, John Coone, was seeking a divorce at the time of the hearings. The caseworker described the appellant's relationship with Mr. Coone as volatile. [Id. at 101]. Appellant was granted a civil protection order against Mr. Coone and notified police when he violated the order, but she continued to have an interest in his activities. According to the caseworker, she would call ACDJFS and ask about Mr. Coone during the conversations. [Id. at 101]. The Guardian Ad Litem also discussed the case with appellant and noted that she was obsessed with Mr. Coone and did not talk much about the child. [Id. at 282-83].
 {¶ 14} Appellant consistently maintained a pet in her home. In March 2004, she had a bird, and in May 2005, she had a cat. [August 18, 2005 Hearing Transcript at 117; 125; 153]. [Hereinafter "August Transcript"]. Her reason for having the animals was that she was "an animal lover." [Id. at 233].
 {¶ 15} Appellant did undergo a psychological evaluation, but her attendance in counseling was not consistent. [Id. at 164]. The counselor testified that she had "difficulties establishing a commitment from [appellant] to come to counseling." [July Transcript at 114]. In addition, although appellant made some progress on a few issues, she had made "minimal progress" on decision-making. [Id. at 118]. The counselor noted that appellant did not make decisions that were good in the long-term, especially when the decisions involved money. [Id]. *Page 6 
 {¶ 16} Appellant had been gainfully employed, but had quit the job sometime during the summer of 2005. [August Transcript at 132]. At the time of the third hearing, she had been working at Wendy's for less than three weeks. [December Transcript at 233]. Between the summer and December, she had only worked part-time for a temporary placement agency. [Id. at 195].
 {¶ 17} Appellant had rented an apartment in Ashland around December 2004, but she was behind in the rent as early as May 2005. [July Transcript at 166]. When the December hearing occurred, appellant had been evicted and was trying to acquire a down payment to lease a trailer. [December Transcript at 199, 225]. In May 2005, when asked what she would do if evicted, appellant responded, "I'll just live in my car." [July Transcript at 168].
 {¶ 18} Appellant had attended parenting classes but had not applied the knowledge to her interaction with the child. [August Transcript at 172]. The child's psychologist, Dr. Wilkerson noted that appellant "yelled at him, she hit him, she was sitting in the rocking chair looking at her watch and being aloof, and then she intentionally hurt Brandon to get his attention." [July Transcript at 66-67]. The psychologist admitted that he had only observed one video tape of a visit between appellant and Brandon. Dr. Wilkerson had been supplied that tape by ACDJFS. Dr. Wilkerson had no explanation as to why ACDJFS did not supply videotapes of any of the other visits that had taken place between appellant and the child. The psychologist testified that appellant's contacts with the child "were dysfunctional, and her behavior, in terms of parenting, was inappropriate" and upsetting for the child. [Id. at 70-71]. *Page 7 
 {¶ 19} Appellant's relationship with Brandon was troubled. Brandon's foster mother testified that the child would get angry and act out more when told he would be visiting the appellant. [Id. at 40]. Dr. Wilkerson noted the child's "lack of affection" to appellant during their visit." [Id. at 66]. The caseworker testified that the child clung to her, would not give appellant a hug, and would try to leave the visitation. [August Transcript at 137].
 {¶ 20} Appellant has a number of criminal convictions, including a felony conviction for forgery. She spent time in jail and was on parole.
 {¶ 21} Appellant's parole officer found appellant's residence to be in terrible condition, with animals in the residence, although both her Case Plan and the rules of her parole did not allow such. The home was so cluttered that there was no place to sit and the house had a strong, unpleasant odor. Appellant was ordered by her parole officer to clean up the residence, but she failed to do so, which was personally observed by the parole officer on a number of subsequent visits.
 {¶ 22} The parole officer found letters exchanged between appellant and a convicted felon incarcerated at the Mansfield Reformatory, in violation of the terms of her parole. [July Transcript at 170]. In one of these correspondences, she wrote about asking a co-worker for a gun and said life would be better if the child's father "was gone for good." [Id. at 173]. As a result, appellant's parole officer ordered appellant not to visit the child at the ACDJFS. John Coone also visited at the Department and according to the parole officer, the threats contained in the letter resulted in safety concerns.
 {¶ 23} Those persons working with appellant, including her parole officer and caseworkers, found her, in general, to be an untruthful person. *Page 8 
 {¶ 24} Appellant's visits with the child were supervised at the ACDJFS. The child's reaction to those visits was anger and severe acting out. Appellant stopped visiting in May 2005, because of the orders of her parole officer.
 {¶ 25} The child's foster mother indicated that the child did not speak about appellant at all, but did speak about his father, whom he called "Daddy." Based upon personal observations, the foster mother had no concerns regarding Brandon being with his father. She indicated that Mr. Coone always appeared for scheduled visits and she observed a loving relationship between Mr. Coone and the child.
 {¶ 26} Visits for appellant were supervised up to the time she went to jail in September 2004. Up to that time, there were fifteen scheduled visitation periods and she missed seven of those visitations. After her release from jail, she recommenced visiting and those visits went better until May of 2005, when she stopped visiting with the child. During periods that appellant was not visiting with the child she did not attempt to have any other type of contact, such as letters, nor did she make regular inquiries of the caseworker as to the child's well-being.
 {¶ 27} When the child was placed in his present foster home, he was exhibiting a number of behavioral problems. He was non-verbal, acted out frequently, and was aggressive. At the time of the hearing, the child had been in the same foster home for thirteen months and that family has provided a safe and nurturing home for him and by the time of the hearing he was doing very well in that home. He did participate in counseling, having been seen by a psychologist in June 2004. He thereafter had regular visits with the psychologist until January 2005.
 {¶ 28} The Guardian Ad Litem investigated this case and the circumstances of *Page 9 
the child, participated in the hearing, and filed a written report with the Court. The Guardian Ad Litem was of the opinion that neither parent was in a position to be the residential parent/custodian of the child due to an inability to care for themselves as well as the child.
 {¶ 29} The court concluded that permanent custody was in the best interests of the child. The court found that Brandon Coone was two years old at the time he was removed from the home of his parents. Brandon has continuously remained out of the home. At the time of the filing of the motion for permanent custody, he had been out of his parents' home for thirteen consecutive months and by the time of the hearing had been out of the home for nearly twenty-five months. During the entire period of time that he has been out of the home of his parents the child has never had any unsupervised contact with appellant, has never been to the home of appellant, and there was no evidence that appellant, since the original removal, has ever had a residence that was safe enough that the child could even visit there, let alone be returned to her permanent care.
 {¶ 30} The court further found "[t]he interaction between the child, Brandon Coone, and his mother has been inconsistent, sporadic and when it was taking place it was not a positive interaction and was not beneficial to the child. The evidence is clear that the visits between the child and his mother went badly and that the child not only did not enjoy the visits, but his behavior deteriorated, both during and immediately after the visits. The expert witness in this case, a psychologist, offered the opinion that the relationship between the child and his mother has many negative aspects and that the two are not bonded. There were many periods of time after the child's removal that *Page 10 
there was no contact between the child and his mother, including one period of time when she was in jail and another period of time when her parole officer ordered that she could not go to the ACDJFS due to threats that she had made against Mr. Coone, which potentially compromised the safety of persons at the Department of Job and Family Services. During periods of time when there was no contact between Linda Coone and the child, she did not make any meaningful attempt to inquire as to the child's well-being. In addition, she has not secured a stable residence nor a stable lifestyle since the removal of the child so that she could provide a home in which the child would be safe." [Judgment Entry at 14].
 {¶ 31} Upon issuing findings of fact, the trial court found that the child could not and should not be placed with the appellant within a reasonable time, that the child had been in the temporary custody of appellee for twelve or more months of a consecutive twenty-two month period and that it was in his best interest to be placed into the permanent custody of ACDJFS. (Judgment Entry, April 13, 2007). The trial court issued a separate entry concerning the child's father that was filed May 1, 2007.
 {¶ 32} It is from the April 13, 2007 judgment entry appellant-mother appeals, raising the following assignments of error:
 {¶ 33} "I. THE TRIAL COURT ERRED IN ITS TERMINATION OF THE PARENTAL RIGHTS OF LINDA COONE.
 {¶ 34} "II. THE TRIAL COURT'S DISPOSITION WAS AGAINST THE WEIGHT OF THE EVIDENCE AND WAS NOT IN THE BEST INTERESTS OF THE MINOR CHILD." *Page 11 
 I. {¶ 35} In her first assignment of error appellant maintains that the termination of her parental rights was not in the best interests of the child. We disagree.
 {¶ 36} "[T]he right to raise a child is an `essential' and `basic' civil right." In re: Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, quoting Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208,31 L.Ed.2d 551. A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In re:Smith (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.
 {¶ 37} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B) (1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re: Estateof Haynes (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.
 I. Standard of Review {¶ 38} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case *Page 12 
supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court.In re: Myers III, Athens App. No. 03CA23, 2004-Ohio-657, ¶ 7, citingState v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 II. Requirements for Permanent Custody Awards {¶ 39} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 40} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. *Page 13 
 {¶ 41} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.
A. Temporary Custody for at Least 12 Out of a Consecutive 24-Month Period-R.C. 2151.414(B) (1) (d)
 {¶ 42} Clear and convincing evidence established that Brandon was in the temporary custody of ACDJFS for 12 or more months of a consecutive 22-month period. Consequently, even though the trial court addressed the fact that he could not be placed with appellant within a reasonable time or should not be placed with appellant, this finding was unnecessary to the resolution of this case. See In re: Speaks, 5th Dist. No. 2004 CA 0090, 2005-Ohio-3526 at ¶ 43-44; In re: Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, at ¶ 49. The only consideration in such a case is the best interests of the child, which is determined by consideration of the factors set forth in R.C. 2151.414(D). Id.
 {¶ 43} Appellant does not appeal the trial court's finding that the child was in the temporary custody of appellee for 12 or more of the past consecutive 22 months. Such a finding is enough to satisfy the requirements of R.C. 2151.414(B) (1). See In re: Whipple Children, Stark App. No. 2002CA00406, 2003-Ohio-1101. Further, the trial court's finding that Brandon was in the custody of appellee for 12 or more of the past consecutive 22 months is supported by the record. *Page 14 
 B. The Best Interest of the Child {¶ 44} Appellant argues in her first assignment of error that the trial court erred in finding that termination of her parental rights was in the best interest of Brandon. After establishing that the child has been in temporary custody for at least 12 months of a consecutive 22-month period, the juvenile court then must find by clear and convincing evidence that permanent custody is in the child's best interest. See R.C. 2151.414(B) (1).
 {¶ 45} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 46} Appellant's argument that the termination of her parental rights was in no way necessary to achieve placement of Brandon with his father is misplaced. The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. In re: Awkal (1994),95 Ohio App.3d 309, 315. A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to *Page 15 
the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.
 {¶ 47} In the case at bar, the trial court could not consider the wishes of the child due to his age. (December Transcript at 325-327). The trial court found with respect to the child's custodial history, Brandon had been in the temporary custody for at least 12 months out of a consecutive 22-month period. It also found the temporary placement had lasted since November 2003. (August Transcript at 142). Appellant does not contest either of these findings and the record clearly supports them.
 {¶ 48} The court also clearly considered the interaction of the child with appellant. As can be seen from the previous sections, this factor formed the essence of the court's concerns for Brandon.
 {¶ 49} While evidence was adduced that mother has made progress toward the completion of her case plan services, evidence was also presented that she has made little, if any, progress with dealing with their own mental health issues, missed visitations due to other commitments, and failed to take any responsibility for Brandon's removal from the home. The trial court found that, regardless of appellant's substantial compliance with her case plan, she was still not able to be a successful parent to Brandon.
 III. Conclusion {¶ 50} While the court need only make one of the first four findings required by R.C. 2151.414(B)(1), here it made two, both of which are supported by the record. In addition, the court's determination that an award of permanent custody is in the *Page 16 
children's best interest is clearly justified by the facts. Based on the foregoing, we find that the trial court's findings that the child could not or should not be placed with appellant-mother within a reasonable time, that the child had been in temporary custody for at least 12 months of a consecutive 22-month period, and that the grant of permanent custody was in the child's best interest were not against the manifest weight and sufficiency of the evidence. There was competent, credible evidence supporting the trial court's decision terminating appellant's parental rights and granting permanent custody of the child to ACDJFS.
 {¶ 51} Appellant's first assignment of error is overruled.
 II. {¶ 52} In her second assignment of error appellant contends the trial court's decision to grant custody of Brandon to the child's father, John Coone, with protective supervision to the appellee is not in the child's best interest. [Appellant's Brief at 12-13].
 {¶ 53} At the outset, the appellee contends that appellant failed to file a timely appeal from the trial court's May 1, 2007 dispositional order with respect to the child's father John Coone. For the reasons that follow, we agree.
 {¶ 54} An appeal as of right may be taken by the filing of a timely notice of appeal with the clerk of the trial court in which the judgment was entered. App.R. 3(A). The only jurisdictional requirement for an appeal as of right is the filing of the notice of appeal in a timely manner. App.R. 4(A) states:
 {¶ 55} "A party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of *Page 17 
the notice of judgment and its entry if service is not made on the party within the three day rule period in Rule 58(B) of the Ohio Rules of Civil Procedure."
 {¶ 56} The filing of a timely notice of appeal is a prerequisite to establishing jurisdiction in a court of appeals. Therefore, while in the general sense, this court has jurisdiction to hear appeals in permanent custody cases, that jurisdiction must be invoked by the timely filing of a notice of appeal. The failure to file a timely notice of appeal is a jurisdictional requirement that cannot be ignored. State v.Alexander, 10th Dist. Nos. 05AP-129, 05AP-245,2005-Ohio-5997 at ¶ 17.
 {¶ 57} In the case at bar, appellant failed to file a timely notice of appeal from the trial court's Judgment Entry filed May 1, 2007 in which the trial court's overruled the ACDJFS motion for permanent custody and returned Brandon to his father under protective supervision by the ACDJFS.
 {¶ 58} As noted by the Ohio Supreme Court: "[t]he General Assembly having granted the right to appeal., certainly the manner in which and the time when such appeal shall be perfected are wholly matters of procedure. . . . In fixing a time limit on the perfecting of an appeal as of right the General Assembly in no way infringes any constitutional right possessed by a defendant." State v. Edwards (1952),157 Ohio St. 175, 180-181, 105 N.E.2d 259, 262.
 {¶ 59} While appellant is entitled to a right of appeal, that right to appeal expired when both appellant and counsel failed to file a notice of appeal within the time required by App.R. 4(A). Therefore, the court has no jurisdiction to entertain an appeal as of right from the trial court's Judgment Entry filed May 1, 2007 in which the trial court's overruled the ACDJFS motion for permanent custody and returned Brandon to his *Page 18 
father under protective supervision by the ACDJFS. Cf. State v.Alexander, supra at ¶ 19.
 {¶ 60} Appellant's second assignment of error is dismissed.
 {¶ 61} The judgment of the Ashland County Court of Common Pleas, Juvenile Division is affirmed.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Ashland County Court of Common Pleas, Juvenile Division is affirmed. Costs to appellant. *Page 1