OPINION *Page 3 
{¶ 1} Father-Appellant, Patrick Howard, Jr., appeals the September 2, 2008, decision of the Guernsey County Court of Common Pleas, Juvenile Decision, to grant permanent custody of his two children to the Guernsey County Children's Services Board. The facts giving rise to this appeal are as follows.
 {¶ 2} Patrick Howard, Jr. and Amanda McAfee are the biological parents of P.H. (DOB 3/21/05) and A.H. (DOB 7/14/06). On March 6, 2007, the Guernsey County Children's Services Board ("GCCSB") received a report of physical abuse of P.H. and A.H. Father and mother were involved in a domestic violence incident that resulted in the arrest of both parents. At that time, the GCCSB "safety-planned" the children with their maternal aunt at the request of both parents.
 {¶ 3} On April 12, 2007, the maternal aunt contacted GCCSB and stated that she could no longer care for the children. GCCSB attempted to contact the parents, but could only reach Mother. Mother stated that she had no other place for the children to go. On April 16, 2007, GCCSB filed a complaint, alleging that the children were neglected, abused and dependent under R.C. 2151. An emergency hearing was held and the trial court granted temporary custody of the children to GCCSB.
 {¶ 4} The trial court held an adjudicatory hearing on June 19, 2007. GCCSB dismissed the allegations of neglect and abuse, and both parents admitted the dependency allegations of the complaint. A dispositional hearing was held on July 12, 2007, where temporary custody of the children with GCCSB was continued and a case plan was approved for the parents. Father was to have a drug and alcohol assessment and follow all recommendations; complete a mental health evaluation and follow all recommendations; attend anger management through the Haven of Hope and follow all *Page 4 
recommendations; attend 95 percent of visitation with his children; and obtain safe and suitable housing.
 {¶ 5} GCCSB filed a motion for permanent custody of the children on December 17, 2007. The hearing was continued due to the consideration of the children's paternal grandparents as temporary custodians. On March 8, 2008, temporary custody was awarded to the paternal grandparents.
 {¶ 6} On June 18, 2008, the paternal grandparents returned the children to GCCSB, stating they were no longer able to maintain the placement of their grandchildren due to the severity of the behaviors P.H. was exhibiting. P.H. was sexually acting out and demonstrating other destructive behaviors that the grandparents were not able to cope with. On June 19, 2008, the trial court granted temporary custody of the children to GCCSB.
 {¶ 7} GCCSB renewed its motion for permanent custody. A hearing was held on August 26, 2008. The parents appeared for the hearing represented by counsel. On September 2, 2008, the trial court issued its judgment entry stating that the children could not be placed with either parent within a reasonable time and it was in the best interests of the children for permanent custody to be awarded to GCCSB. It is from this decision Father now appeals.[1]
 {¶ 8} Father raises one Assignment of Error:
 {¶ 9} "I. THE JUVENILE COURT ABUSED ITS DISCRETION, AND ITS JUDGMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE, WHEN IT FOUND THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF THE FATHER." *Page 5 
 {¶ 10} In his sole Assignment of Error, Father argues the trial court abused its discretion by finding the children could not be placed with him within a reasonable time and that the grant of permanent custody to GCCSB was in the children's best interest. We disagree.
 {¶ 11} "[T]he right to raise a child is an `essential' and `basic' civil right." In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, quoting Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208,31 L.Ed.2d 551. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In re Smith (1991), 77 Ohio App. 3d 1, 16,601 N.E. 2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.
 {¶ 12} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.
 {¶ 13} Even under the clear and convincing standard, this Court's review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. In re Myers III, Athens App. No. 03CA23, 2004-Ohio-657, ¶ 7, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, *Page 6 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. In reOhler, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, citing Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 14} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 15} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:
 {¶ 16} "(a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 17} "(b) the child is abandoned and the parents cannot be located;
 {¶ 18} "(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or
 {¶ 19} "(d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 20} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial *Page 7 
court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B) (1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 21} The trial court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See In re: William S.,75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6; In re: Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 22} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:
 {¶ 23} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the *Page 8 
Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 24} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 25} "* * *
 {¶ 26} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 27} "* * *
 {¶ 28} "(16) Any other factor the court considers relevant."
 {¶ 29} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to:
 {¶ 30} "(1) the interrelationship of the child with others;
 {¶ 31} "(2) the wishes of the child; *Page 9 
 {¶ 32} "(3) the custodial history of the child;
 {¶ 33} "(4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and
 {¶ 34} "(5) whether any of the factors in divisions (E) (7) to (11) apply."
 {¶ 35} At the permanent custody hearing, the trial court heard testimony from Johnna Hall, the caseworker assigned to the case after the original complaint was filed in April 2007. Ms. Hall testified as to Father's case plan and his compliance with the terms of his case plan during the pendency of the matter from July 2007 to June 2008. Ms. Hall stated that Father had obtained his mental health assessment and had completed anger management with the Haven of Hope, but for one course. (T. 12, 14). Father had obtained safe and secure housing at the time of the hearing. (T. 14). At the time of the hearing, Father had been terminated from his full-time employment and was working part-time at a neighboring county's fair. (T. 84)
 {¶ 36} Also as part of his case plan, Father was required to complete a drug and alcohol assessment and follow all recommendations. (T. 12). Ms. Hall reported that Father had undergone a drug and alcohol assessment with Cambridge Drug and Alcohol, but had been discharged as unsuccessful. (T. 13). Father testified his work schedule prevented his attendance and had only attended two AA meetings for the same reason. (T. 70-71).
 {¶ 37} Visitation with his children was also a part of Father's case plan. (T. 12). Father was required to attend 95 percent of visitations scheduled with the children, which resulted in the possibility of 33.5 scheduled visits within the period of April 2007 to June 2008. (T. 42). Ms. Hall testified that Father had attended only 17 visits in the 14-month *Page 10 
period of April 2007 to June 2008. (T. 15). Father testified that he has not seen his children since May 2008. (T. 79).
 {¶ 38} In order to facilitate the visitations with the foster parent's schedule, Father was to call GCCSB on the morning of his visits to let GCCSB know if he was going to attend. (T. 15). Father testified that one of the reasons that he had failed to visit with his children was due to the fact that he had to walk through town to his deceased father's law office to phone GCCSB to arrange visits with his children and could not afford the quarter for a phone call.[2] (T. 81). If he did not call in time, GCCSB would cancel the visitation. (T. 79). GCCSB moved Father's visitation schedule from Tuesdays and Thursdays to four hours on Wednesdays at Father's request to accommodate his work schedule. GCCSB transported the children to Father's location for visitation. (T. 62). Despite these efforts, Father's visits with his children were infrequent.
 {¶ 39} Based on the above evidence, the trial court determined that the children could not be placed with Father within a reasonable time. The trial court concluded that Father had made limited progress on his case plan during the 16 months the children were in custody of GCCSB. Upon our review of the record, we find that clear and convincing evidence supports the decision of the trial court that the children could not or should not be returned to Father within a reasonable time.
 {¶ 40} The trial court next determined that it was in the best interests of the children that it grant permanent custody to GCCSB. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent *Page 11 
custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quotingIn re Awkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 41} Ms. Hall testified that P.H., the older child, has an attachment with Father. (T. 31). The younger child has no attachment to Father. Ms. Hall testified that the visitations she observed between the children and Father went well. (T. 46).
 {¶ 42} The trial court found the children interact with and are integrated into the foster parent's home. The foster parent is providing for the children's needs, specifically making sure the children's therapies and counseling sessions are being met. (T. 32). Ms. Hall testified that P.H. has been evaluated at the Akron Children's Hospital and the following diagnoses were made: parent/child relational problems, sexual abuse, adjustment disorder with mixed disturbances of emotions and conduct, and destructive behavior disorder. (T. 49). P.H.'s behavioral needs ultimately resulted in the failure of two family placements. Ms. Hall testified that the significance of P.H.'s behavior has gotten worse. (T. 65).
 {¶ 43} Additionally, the trial court found that the wishes of the children, as expressed through the guardian ad-litem, was for the permanent custody motion to be granted. The trial court also found that the children need a legally secure permanent placement, and that permanency could not be achieved without a grant of permanent custody to GCCSB.
 {¶ 44} We determine upon a thorough review of the record that clear and convincing evidence supports the juvenile court's finding that the best interests of the children would be served by the grant of permanent custody to GCCSB. *Page 12 
 {¶ 45} For these reasons, we find that the trial court's determination that the child could not be placed with Father within a reasonable time or should not be placed with him, was not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to GCCSB was in the child's best interest was not against the manifest weight or sufficiency of the evidence.
 {¶ 46} Father's sole Assignment of Error is overruled.
 {¶ 47} For the foregoing reasons, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.
Delaney, J., Gwin, P.J., and Hoffman, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to Appellant.
[1] Mother failed to file a notice of appeal of the trial court's decision.
[2] The trial court made the following observation in its judgment entry regarding Father's testimony, "Five minutes after the father's testimony his cell phone rang twice. It is a different time but it does give this Court pause." (Judgment Entry, Sept. 2, 2008). *Page 1