OPINION *Page 2 
{¶ 1} Appellant-father Larry Winland appeals the decision of the Muskingum County Court of Common Pleas, Juvenile Division, which granted permanent custody of his child, Jolynn to appellee Muskingum County Children's Services ("MCCS").
 STATEMENT OF THE CASE AND FACTS {¶ 2} Muskingum County Children Services became involved with Jolynn on April 24, 2006, regarding a referral that Jolynn's mother was alleged to be homeless and addicted to heroin. Jolynn at that time had just turned three years old. An MCCS caseworker eventually located Jolynn's mother (Ashley Hennessey) on May 22, 2006. The mother admitted her addiction. The mother agreed to place Jolynn with Jolynn's aunt, with the understanding that the mother was to have no unsupervised contact with Jolynn. The aunt contacted MCCS on June 2, 2006, stating she was no longer able to care for Jolynn. The mother signed a voluntary agreement placing Jolynn in foster care. MCCS filed a Complaint on June 5, 2006, alleging the child Jolynn Winland to be dependent and neglected. At that time, the child's father, appellant, was in jail. Jolynn was placed into the shelter care custody of MCCS. Jolynn was found to be a dependent child on August 22, 2006, and placed in the temporary custody of MCCS. MCCS filed a Motion for Permanent Custody on March 29, 2007.
 {¶ 3} Appellant's case plan included obtaining an assessment for substance abuse issues, and following all recommendations for treatment. Caseworker Laine Davis testified that appellant completed an assessment in the summer of 2006, with no recommendations for treatment unless he tested positive or there were reports of alcohol abuse. (1T. at 195). Caseworker Davis testified that although appellant was *Page 3 
subsequently arrested two times following his assessment (once in November 2006 for open container; once in May 2007 for disorderly conduct by intoxication), appellant did not obtain another assessment or seek counseling. (1T. at 195-196).
 {¶ 4} Appellant testified that he had gone to some AA meetings because he was on probation, and he informed Caseworker Davis about those meetings. (1T. at 32). However, Caseworker Davis testified she had no knowledge of his attendance at AA meetings. She further testified that appellant's history of alcohol abuse and alcohol-related arrests and criminal convictions continued to be a cause of serious concern regarding appellant's ability to care for the child. (1T. at 196).
 {¶ 5} The trial court also found as follows: "The father has a history of many misdemeanor convictions, incarcerations and alcohol abuse. Use is significant and affects the parent's ability to provide an adequate permanent home for the child at this time, and as anticipated, within one (1) year after this Court holds this permanent custody hearing. . ." (Judgment Entry, May 13, 2008 at 6).
 {¶ 6} Appellant's supervised visits with the child had been going fairly well at the agency, but prior to increasing or extending the visits MCCS requested appellant undergo a psychological evaluation.
 {¶ 7} Dr. Howard Beazel conducted the psychological evaluation of appellant. Dr. Beazel testified, "He [appellant] reported a rather severe history of alcohol abuse to the point of dependency actually. He told me that he first consumed a can of beer when he was rather young, but then started drinking more heavily, I believe, at approximately age 20 or 21. And he essentially said he drank on weekends to the point of drunkenness. He also reported that he had been arrested and placed in jail nearly 20 *Page 4 
times, and he attributed — I believe he may have attributed all of those, or most of them, to his alcohol abuse." (1T. at 52).
 {¶ 8} Dr. Beazel testified regarding appellant's brain injury and his ADHD, "So I admit I was confused, because he told me he got social security for ADHD and the brain injury, but then he told me the brain injury didn't happen until about two years before I saw him, yet he had been on social security, I believe, from the age of 18 until he lost it when he went to jail some years ago." (1T. at 51).
 {¶ 9} Appellant also disclosed to Dr. Beazel the severity of his anxiety, "He also essentially said that he had difficulty being in public, feeling that others were negatively evaluating him on a fairly regular constant basis, and he, therefore, avoided going out in public a lot. Some of his records from Six County confirmed that he'd indicated to them such things as he had trouble going to the grocery store and to the bank, and that he avoided crowds and public places a lot." (1T. at 56).
 {¶ 10} However, appellant testified that he had taken himself off all medications for a period of seven or eight months, and that just within the past month he again starting taking medications for his anxiety problem. (1T. at 24-26).
 {¶ 11} Appellant has also been suicidal in the past, attempting to hang himself in the jail on two separate occasions in 2005. The first was September 19, 2005, as testified to by Deputy Hartman, who found him hanging in the shower by bed sheets. Appellant was unresponsive and was blue in color. Two other inmates first discovered him and had to hold him up while calling for help. (1T. at 129-130). The second attempt was in December 9, 2005. Corporal Parry testified that he discovered appellant hanging in his cell using two tube socks as a noose, his face bluish in color. (1T. at *Page 3 
135-136). However, appellant testified there was only one suicide attempt which occurred in 2006. (1T. at 29-30).
 {¶ 12} Dr. Beazel summed up as follows: "It's my opinion that based on his [appellant's] reported history and presentation and essentially avoidance of adult responsibilities, that he is unlikely at all to meet the demands of parenting." (1T. at 59).
 {¶ 13} The trial court found, "150 visits were offered to father [appellant] and he attended 80." (Judgment Entry, May 13, 2008 at 6.). (1T. at 203). "To the Court, [appellant's] attending only 80 of 150 visits is a significant indicator of his execution and recognition of, for the needs of the child. Missing that many visits speaks volumes to both his insight and appreciation for the needs of the child and his duties to the child." (Judgment Entry, May 13, 2008 at 3). Caseworker Davis testified that appellant would call the agency and cancel visits using excuses such as "he's got bills to pay or he's got errands to run. . ." (1T. at 203-204).
 {¶ 14} Mother was convicted of several felony charges in November 2006 and sentenced to two years in prison.
 {¶ 15} On May 13, 2008, the court filed its Findings of Fact and Conclusions of Law terminating appellant-father's parental rights, and granting permanent custody of the minor child to MCCS.
 {¶ 16} Appellant-father timely appeals raising the following three assignments of error:
 {¶ 17} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING PERMANENT CUSTODY TO MUSKINGUM COUNTY CHILDREN *Page 6 
SERVICES WHEN SERVICE OF THE MOTION FOR PERMANENT CUSTODY WAS NOT PROPERLY MADE UPON THE FATHER, LARRY WINLAND.
 {¶ 18} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 19} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY WHEN THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILD SHOULD NOT BE PLACED WITH APPELLANT AND THAT IT WAS IN THE BEST INTEREST OF THE CHILD TO BE PLACED IN THE PERMANENT CUSTODY OF MUSKINGUM COUNTY CHILDREN SERVICES."
 I. {¶ 20} Appellant argues that even though he was served with a copy of the complaint, the trial court had no jurisdiction to enter an order of permanent commitment because he was not personally served as required by R.C. 2151.353(B). We disagree.
 {¶ 21} Parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. Santosky v.Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 2d 599. Consequently, when the State seeks to terminate parental custody, parents are entitled to due process guarantees under theFourteenth Amendment to the United States Constitution, including a hearing upon adequate notice, assistance of counsel, and (under most circumstances) the right to be present at the hearing itself. Id. *Page 7 
 {¶ 22} R.C. 2151.414(A), governing permanent custody hearings, provides that all parties to the action must be given notice of the filing of the motion for permanent custody and of the hearing.
 {¶ 23} R.C. 2151.29 providing for service of a permanent custody motion, states in relevant part, "Service of summons, notices, and subpoenas, prescribed by section 2151.28 of the Revised Code, shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail."
 {¶ 24} The jurisdiction of the Juvenile Court does not attach until proper notice of the proceedings has been provided to the parties.In re Cowling (1991), 72 Ohio App.3d 499, 502, 595 N.E.2d 470; In reMiller (1986), 33 Ohio App.3d 224, 226, 515 N.E.2d 635; In reFrinzl (1949), 152 Ohio St. 164, 177, 87 N.E.2d 583.
 {¶ 25} In the case at bar, appellant was served by certified mail with the notice of hearing, the summons, and the motion for permanent custody on April 9, 2007. The "green card" evidencing receipt of the certified mail, sent to 318 Pine St., Zanesville, Ohio, was signed by Brandon Alexander, age 19, who appellant admitted was living at that address with appellant. (1T. at 7-8). Appellant stated on the record that he did in fact receive notice. (1T. at 7). In addition, personal service was perfected on appellant by process server, two days before the permanent custody hearing. (See Return of Service filed on April 24, 2008.)
 {¶ 26} Appellant filed an Indigency Affidavit and requested a court-appointed attorney on July 17, 2007. The court appointed counsel for appellant on July 25, 2007. *Page 8 
Appellant's counsel filed and received discovery, was present and participated fully at pre-trial hearings and the final hearing. Appellant's trial counsel did not request a continuance due to the timing of the personal service or for lack of notice of the permanent custody motion. The final hearing date was scheduled by Judgment Entry filed January 29, 2008. That entry was served upon appellant's trial counsel. The permanent custody hearing commenced on April 22, 2008.
 {¶ 27} There is no question that appellant in the instant case had actual notice of the proceedings, appeared, defended, and was given a full opportunity to be heard. Appellant does not argue that he was unaware of the nature of the proceedings. Further, appellant was represented by counsel throughout the proceedings. See, Ross v.Saros, 99 Ohio St.3d 412, 792 N.E.2d 1126, 2003-Ohio-4128 at ¶ 17.
 {¶ 28} Accordingly, we find that appellant received proper notice and the trial court had jurisdiction to render a decision.
 {¶ 29} Appellant's first assignment of error is denied.
 II. III. {¶ 30} In his second assignment of error appellant maintains that the termination of his parental rights was not in the best interests of the child. In his third assignment of error, appellant argues that the trial court abused its discretion by finding that the child should not or could not be placed with him within a reasonable period.
 {¶ 31} The assignments of error are interrelated and will be addressed together.
 A. Burden Of Proof {¶ 32} "[T]he right to raise a child is an `essential' and `basic' civil right." In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, quoting Stanley v. Illinois *Page 9 
(1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; Santosky v. Kramer (1982), 455 U.S. 745, 753,102 S.Ct. 1388, 71 L.Ed. 2d 599. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In re Smith (1991),77 Ohio App. 3d 1, 16, 601 N.E. 2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.
 {¶ 33} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B) (1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.
 B. Standard of Review {¶ 34} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. In re Myers III, Athens App. No. 03CA23,2004-Ohio-657, ¶ 7, citing State v. Schiebel (1990), 55 Ohio St.3d 71,74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact.In re Ohler, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, *Page 10 
citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 C. Requirements for Permanent Custody Awards {¶ 35} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 36} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 37} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in *Page 11 
R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 1. Parental Placement within a Reasonable Time-R.C. 2151.414(B) (1) (a) and the Best Interest of the Children. {¶ 38} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) — (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See In re: William S.,75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1997 WL 701328; In re: Butcher (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.
 {¶ 39} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:
 {¶ 40} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court *Page 12 
determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 41} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 42} "* * *
 {¶ 43} "(16) Any other factor the court considers relevant."
 {¶ 44} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E) (7) to (11) apply. *Page 13 
 {¶ 45} As detailed above, the evidence demonstrated the successful efforts appellant-father had made in the case to regain custody of his daughter. On that point, the evidence demonstrates that any improvement the appellant-father has made in his life is tentative and, perhaps, temporary. The trial court found that, regardless of appellant's compliance with aspects of his case plan, he was still not able to be a successful parent to this child.
 {¶ 46} In the case of In re: Summerfield, Stark App. No. 2005CA00139,2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence; a court does not err in finding the child cannot be placed with the parent within a reasonable time.
 {¶ 47} Based upon the foregoing, we determine upon a thorough review of the record that clear and convincing evidence supports the juvenile court's finding that the child could not or should not be returned to the appellant-father within a reasonable time. Despite offering numerous services, the appellant-father was unable to mitigate the concerns that led to the child's removal.
 {¶ 48} The trial court made findings of fact regarding the child's best interest. The trial court considered the factors listed in R.C. 2151.414 and determined that it was in the best interest of the children to be placed in permanent custody of MCCS.
 {¶ 49} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Inre *Page 14 Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quotingIn re Awkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 50} Furthermore, "[i]t is axiomatic that both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent." In re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165, citing Miller v. Miller (1988),37 Ohio St.3d 71, 75, 523 N.E.2d 846.
 {¶ 51} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the [trier of fact], who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward,140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United Statesv. Scheffer (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record, Miller v. Miller (1988),37 Ohio St. 3d 71.
 {¶ 52} The Trial Court found that, "[t]he parents have a history of repeated extended incarceration, which restricts the parents from providing care for the child." (Judgment Entry, May 13, 2008 at 6). Dr. Beazel testified regarding appellant's admission that he had been arrested and jailed at least 20 times, due to intoxication. *Page 15 
(1T. at 52). Dr. Beazel testified that appellant, who was 29 years old at the time of his evaluation, admitted that his incarcerations added up to a total of 6 years of his adult life. (1T. at 57). Appellant testified that his alcohol-related offenses began when he was a minor. (1T. at 31). Appellant continued to have run-ins with the local police during the time the case was open. Appellant was arrested in November 2006 for having an open container, and again in May 2007 for disorderly conduct by intoxication.
 {¶ 53} As the Trial Court succinctly stated: "Dr. Beazel cited several conditions affecting [appellant's] ability to meet the custodial needs of his child. He opines those conditions do in fact prevent Mr. Winland from being able to meet the demands of parenting." Judgment Entry, May 13, 2008 at 3. Pages four and five of the Judgment Entry outline each factor required to be considered, including: the child's relationships with her parents, foster family, and relatives; the child's wishes; and the child's custodial history.
 {¶ 54} In the case sub judice, upon review of the record and the extensive findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody of the children to MCCS was made in the consideration of the child's best interests and did not constitute an abuse of discretion.
 {¶ 55} After examining the record, we find no abuse of discretion on the part of the trial court. Additionally, we find that there was clear and convincing evidence that supports the trial court's decision that granting permanent custody to MCCS is in the child's best interests. *Page 16 
 {¶ 56} Because the award was based upon a substantial amount of credible and competent evidence, we must defer to the trial court's factual determination that it was appropriate for MCCS to receive permanent custody of the children.
 {¶ 57} Appellant's second and third assignments of error are denied.
 {¶ 58} The judgment of the Muskingum County Court of Common Pleas, Juvenile Division is affirmed.
 Gwin, P.J., Edwards, J., and Delaney, J., concur *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Muskingum County Court of Common Pleas, Juvenile Division is affirmed. Costs to appellant. *Page 1