**[Cite as *In re C.I.P.*, 2011-Ohio-3475.]**

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 96103, 96104, and 96105**

## IN RE: Cl.P., ET AL.

## Minor Children

[Appeal By C.P., Father]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-08939325, AD-08939326,
and AD-10900406

**BEFORE:** Celebrezze, J., Blackmon, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**    July 14, 2011
**ATTORNEYS FOR APPELLANT**

Christopher R. Lenahan
2035 Crocker Road
Westlake, Ohio   44145

Michael S. Weiss
602 Rockefeller Building
614 Superior Avenue
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE, C.C.D.C.F.S.**

William D. Mason
Cuyahoga County Prosecutor
BY:   Janna R. Steinruck
Assistant Prosecuting Attorney
3955 Euclid Avenue
Room 305E
Cleveland, Ohio   44115


**GUARDIAN AD LITEM FOR CHILDREN**

Mark Witt
6209 Barton Road
North Olmsted, Ohio   44070-3856


**GUARDIAN AD LITEM FOR MOTHER**

Carla Golubovic
P.O. Box 29127
Parma, Ohio   44129

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Appellant, C.P.,[1] appeals the Cuyahoga County Juvenile Court's grant of permanent custody to the Cuyahoga County Department of Children and Family Services ("CCDCFS") of his three children — Cl.P. (d.o.b. 4/24/2007), Cr.P. (d.o.b. 4/18/2008), and V.P. (d.o.b. 1/14/2010). After a thorough review of the record and law, we affirm.

{¶ 2} CCDCFS has been involved in the lives of the children of V.W. ("mother") since 2007 when allegations of educational neglect surfaced regarding mother's two oldest daughters. CCDCFS obtained emergency, and then temporary custody, of mother's six children on February 29, 2008 and December 9, 2008, respectively.[2] V.P. came into its custody on January 16, 2010, within days of her her birth. The children were initially placed together with their maternal grandmother, but because of the unruly behavior of the older siblings, the children were split up. Cl.P., age three at the time of the permanent custody hearing, was placed, along with his older half-brother D.J., with one foster family. Cr.P. was placed with a different family, and V.P. was placed with a third family. Appellant is the confirmed father of Cl.P., Cr.P., and V.P.

---

[1] The parties' identities herein are shielded in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

[2] Cr.P. was taken into custody shortly after her birth in April 2008.

{¶ 3} CCDCFS developed a case plan for mother and appellant in an attempt to provide the children with a safe, stable home environment. Mother and appellant were to attend various parenting, domestic violence, and financial management classes. Mother was also to participate in mental health programs and drug treatment. Mother and appellant attended the required classes and participated in regular visitation while the children were under the care of CCDCFS. However, Jamessa Motley, the social worker managing the case, felt that the parents did not benefit from the classes and programs that they participated in. After the completion of two domestic violence courses, instances of domestic violence against mother were reported to the social worker. Further, mother and one of the children told Ms. Motley that mother had found mother's oldest child and a few of her friends smoking marijuana and that appellant had supplied at least some of the drugs.

{¶ 4} CCDCFS filed for permanent custody on February 8, 2010. The cases were consolidated in a single hearing for permanent custody of the four youngest children. At the hearing, appellant's sister, K.O., came forward and expressed her interest in caring for the four youngest children through an award of legal custody. K.O. had first expressed this interest in June 2009, but did not submit fingerprints or other paperwork necessary for a background check until June 17, 2010. CCDCFS also required K.O. to

demonstrate, among other things, residency for the previous five years to establish that she could provide a stable living environment and that she had been an Ohio resident. K.O. responded with some documentation at the adjudicatory hearing for V. P. on April 30, 2010, but Ms. Motley testified that the paperwork provided only established residency for 2008 and 2009. Also, K.O. did not file an official motion for legal custody until May 24, 2010, and she was still required to provide adequate documentation for 2005, 2006, and 2007. The court continued the custody hearing for one month, until October 21, 2010, to allow K.O. to gather the required documentation.

**{¶ 5}** The trial court ultimately found that placement with K.O. was not suitable for four children. K.O. had changed her mind several times about taking in the children and had failed to provide the documentation requested by CCDCFS for consideration.

**{¶ 6}** The court also found that CCDCFS had demonstrated through clear and convincing evidence that appellant did not benefit from the case plan even though he had substantially complied with the plan and also that placement with mother was not a viable option.

**{¶ 7}** The court awarded permanent custody of all four children to CCDCFS on October 28, 2010. Appellant then filed a separate appeal for each of his three children, assigning the same error. These three cases were consolidated into the instant appeal.

## Law and Analysis

## Award of Permanent Custody

{¶ 8} Appellant argues that "[t]he trial court's order granting permanent custody to the CCDCFS was not based upon sufficient clear and convincing evidence."

{¶ 9} The legislature recognized that the power to terminate parental rights should only be exercised in limited circumstances and only upon clear and convincing evidence demonstrating that such action is in the best interest of the child.[3] R.C. 2151.01(A). R.C. 2151.414(B)(1) prescribes a set of rules that trial courts in Ohio must follow before terminating parental rights:

{¶ 10} "[T]he court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶ 11} "* * *

{¶ 12} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve

---

[3] "Clear and convincing evidence" has been defined as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and

or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state."

{¶ 13} Another way parental rights may be terminated is embodied in R.C. 2151.353, disposition of a complaint after a finding that a child is abused, neglected, or dependant.

{¶ 14} In spite of the gravity that the termination of parental rights has, "our review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *In re Myers III*, Athens App. No. 03CA23, 2004-Ohio-657, ¶7, citing *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. *In re Ohler*, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶15, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273." *In re Winland*, Muskingum App. No. CT2008-0030, 2008-Ohio-6476, ¶34.

---

unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.

### a. Permanent Custody of V.P.

{¶ 15} Because V.P. was taken from mother at birth and had not yet been in the custody of CCDCFS for at least 12 months of a 22-month period, the award of custody was accomplished through R.C. 2151.353. V.P. was found to be a dependant child, and permanent custody was awarded to CCDCFS through R.C. 2151.353(A)(4). This statute provides for commitment of the child to the permanent custody of CCDCFS after a finding that the child is abused, neglected, or dependant "if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interests of the child."

{¶ 16} R.C. 2151.414(E)(1) through (12) lists several factors the trial court should consider that are applicable to this case, including: (a) A failure to substantially remedy the conditions that caused removal; (b) causing or allowing the child to suffer neglect; (c) a demonstrated unwillingness to provide an adequate permanent home for the child; (d) the withholding of medical treatment and food when sufficient resources are available for such things; (e) the parent has had parental rights involuntarily terminated with respect to a sibling of the child; and, (f) any other relevant factor.

{¶ 17} Regarding appellant, the trial court found that he failed to substantially remedy the conditions that led to removal of the child and could not provide an adequate permanent home for the child.

{¶ 18} Mother had her parental rights of the siblings of V.P. involuntarily terminated; demonstrated an inability to care for the child or provide basic necessities such as food and medical care even though sufficient funds were provided through public programs; and did not remedy the conditions that led to removal of the child. Mother also suffered from a history of mental illness and attempts and threats to attempt suicide.

{¶ 19} These findings are supported in the record. The trial court found that Cl.P., Cr.P., and V.P. could not be placed with either parent in a reasonable time. The court also noted that the children were doing well in their foster homes and were reaching targets for normal social and physical development, which had been a problem for the children previously in mother's and appellant's care.

{¶ 20} Only one factor enumerated in R.C. 2151.414(E) need be met to support the trial court's award of permanent custody to CCDCFS. *In re William S.,* 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738, at the syllabus. Here, there is substantial evidence in the record of at least one factor.

### b. Permanent Custody of Cl.P. and Cr.P.

{¶ 21} Both Cl.P. and Cr.P. were in the custody of CCDCFS for over 12 consecutive months. Therefore, permanent custody may be granted under R.C. 2151.414(B)(1)(d) if it is shown by clear and convincing evidence that it is in the best interest of the children.

{¶ 22} R.C. 2151.414(D)(1) directs the trial court to consider the following factors to determine what is in the best interest of a child: "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child; (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * ; (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 23} Pursuant to R.C. 2151.281(A) and (B)(1), the trial court appointed a guardian ad litem ("GAL") for the children. The GAL recommended that permanent custody be awarded to CCDCFS.

{¶ 24} For all three children, the trial court found that appellant could not provide a suitable environment for the children, did not substantially remedy the conditions causing the children to be placed outside the home, and that an award of permanent custody to CCDCFS was in the best interest of the children. The court relied on the testimony of Ms. Motley, the GAL, and K.O.

{¶ 25} Ms. Motley testified that appellant engaged in acts of domestic violence after a visitation session with the children in March or April of 2010. The incident was witnessed by N.L., the father of a sibling of the children, who testified about the incident. Ms. Motley also testified about an incident involving appellant providing marijuana to mother's oldest daughter in January 2010.

{¶ 26} This demonstrated appellant's inability or unwillingness to remedy the reasons the children were originally removed from the home. Appellant was also not truthful in providing his address to CCDCFS. Appellant had stated that he lived with K.O., but provided an address where she no longer lived, and he had not updated that address. Ms. Motley testified that appellant never provided CCDCFS with K.O.'s current address as his residence.

{¶ 27} Ms. Motley testified that whenever she visited mother's apartment, appellant was there, but, at times, he stated he did not live there.

Appellant did not provided CCDCFS with a single address where it could assess his ability to provide a stable living environment for the children. If he continued to live with mother, evidence existed in the record to establish a history of prior and ongoing domestic violence and an unsuitable living environment for the children. K.O. testified that mother's home was not suitable for children. However, Ms. Motley testified that she observed appropriate relationships and interactions between appellant, Cl.P., and Cr.P. during visits. The GAL testified that placement with appellant was not in the best interest of the children and that permanent custody should be awarded to CCDCFS.

{¶ 28} Competent, credible evidence exists in the record to support the trial court's conclusion that appellant was not a suitable choice for placement of Cl.P., Cr.P., and V.P. Appellant did complete most, if not all, of his case plan, but "R.C. 2151.414(D) does not require courts to deny a children services agency's motion for permanent custody solely by virtue of a parent's substantial compliance with the case plan." *In re D.S.*, Franklin App. Nos. 07AP-479 and 07AP-485, 2007-Ohio-6781, fn.1. See, also, *In re T.W.*, Franklin App. Nos. 10AP-897, 10AP-898, and 10AP-899, 2011-Ohio-903, ¶55.

### c. Award of Legal Custody to an Interested Relative

{¶ 29} Finally, appellant argues that even if placement of the children in his custody was not appropriate, the court erred when it did not award custody to his sister, K.O.

{¶ 30} The trial court is instructed to consider the availability of relatives who have come forward to accept custody of the children, but that duty does not "include the requirement that the juvenile court find by clear and convincing evidence that no suitable relative was available for placement.  The statute requires a weighing of all the relevant factors[.]  * * *  R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d).  The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor.   The statute does not even require the court to weigh that factor more heavily than other factors." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶64.  Further, appellant only has standing to argue this error as it applies to the termination of his parental rights.  *In re J.J.*, Summit App. No. 21226, 2002-Ohio-7330, ¶36.

{¶ 31} Although K.O. had an appropriate relationship with the children during visitation, and a three-bedroom apartment suitable for children, she was not able to satisfy some paperwork requirements that CCDCFS required for consideration for an award of legal or permanent custody.   The trial court

seriously considered K.O., but determined that she did not demonstrate an ability to take on the significant responsibility of raising four children in addition to her 19-year-old daughter, who suffered from a significant medical condition. She failed to provide sufficient evidence of residency even after the court continued the hearing to allow her to do so. Further, K.O. had at least five different addresses in the last five years. This, the trial court reasoned, did not show a stable living environment for the children. Also, K.O. only very recently began to visit with the children at the time of the hearing, even though she expressed an interest in taking legal custody as early as June 2009. She had only attended four visits and had never met three of the four children prior to her first visit.

{¶ 32} While K.O. may have presented a hopeful option for placement early on, her inability to satisfy requirements in order to be considered for placement, her residential history, and the fact that she was caring for her own daughter with a serious medical condition ultimately led the trial court to conclude that placement with her was not in the best interest of the children. That decision is supported by the evidence in this case.

## Conclusion

{¶ 33} The children were thriving in their respective foster homes. Cl.P., who had suffered hearing loss from untreated ear infections, was beginning to advance in speech and vocabulary as a result of medical

treatment. The children's basic needs were being met, and the children were no longer being parented by their older siblings — a problem noted by Ms. Motley in the case of the older children, including D.J.[4] While appellant and mother substantially completed their case plans, the threat of domestic violence, the lack of parenting skills, and the inability to resolve these issues led the trial court to conclude that awarding permanent custody to CCDCFS was in the best interest of the children. That decision is supported in the record.

{¶ 34} Appellant's sole assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA A. BLACKMON, P.J., and
SEAN C. GALLAGHER, J., CONCUR

---

[4] D.J. was 12 years old at the time of the hearing and had to learn that he was not Cl.P.'s parent and did not have to care for him at their foster home.