[Cite as *In re N.B.*, 2011-Ohio-2170.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: N.B. | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2011-CA-6 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Fairfield Court of Common Pleas, Juvenile Division, Case No. 2009-AB-8

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     May 4, 2011

APPEARANCES:

For-Appellant-Meagan Barker

JAMES A. FIELDS
117 W. Main Street
Suite 206
Lancaster, OH 43130

JENNIFER HITT
Guardian ad Litem
1224 W. Main Street, Ste. 201
Lancaster, OH 43130

For- Fairfield County Children's Services

JULIE BLAISDELL
239 West Main Street
Lancaster, OH 43130

For-Natural Father of N.B.
AARON CONRAD
120 ½ E. Main Street
Lancaster, OH 43130

*Gwin, P.J.*

**{¶1}** Appellant-mother M.B.[1] appeals the December 17, 2010, judgment entry of the Fairfield County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her minor child, N.B. and granted permanent custody of the child to appellee, Fairfield County Child Protective Services (hereinafter "FCCPS").

## I. Procedural History

**{¶2}** Appellant M.B. is the biological mother of N.B. N.B. was born on December 7, 2007.

**{¶3}** A motion for permanent custody was filed by FCCPS. The trial occurred on December 1, 2009, February 9, 2010, March 9, 2010, and April 22, 2010. At trial, the appellant, the agency's caseworker Tracy Holtel, Jennifer Strunk[2], appellant, and W. R.[3] testified.

**{¶4}** The appellant became involved with FCCPS due to concerns regarding parenting issues. On November 13, 2008, the agency filed a neglect/dependency complaint. At the time of this filing, N.B. was in the custody of FCCPS based on a Voluntary Agreement for Care, signed by appellant. When the Voluntary Agreement for Care was initially put into effect, appellant was residing in Baltimore, Ohio. Also on November 13, 2008, N. B. was placed in the temporary shelter custody of Fairfield County Child Protective Services.

**{¶5}** Ms. Holtel testified that she went over the case plan with appellant on October 15, 2008, and appellant signed it on that day. Despite Ms. Holtel's best efforts,

---

[1] For purposes of anonymity, initials designate appellant's name only. See, e.g., *In re C.C.,* Franklin App. No. 07-AP-993, 2008-Ohio-2803 at ¶ 1, n.1. .
[2] The Guardian Ad Litem
[3] N.B.'s biological father. Paternity was established by genetic testing on April 7, 2009.

she could not reach appellant from October 15, 2008 until January 30, 2009. Appellant did not see N.B. for 104 or 105 days during that period. Appellant contacted Ms. Holtel on January 30, 2009 and they met on February 3, 2009. On February 3, 2009, Ms. Holtel went over the case plan again with appellant.

**{¶6}** The case plan listed the concerns the Agency had with appellant. The agency's concern with appellant included parenting practices, social supports, family roles and relationships. Appellant reported that she was bi-polar and not taking her medications. The agency was also concerned that appellant was leaving N.B. with appellant's brother who had mental health issues and unsafe housing conditions. The case plan required appellant to attend parenting classes, find a mental health doctor and take medications if prescribed, and attend mental health counseling and follow recommendations.

**{¶7}** Ms. Holtel set up parent education at Fairfield County Job & Family Services, but the case was closed after appellant disappeared in October 2008 through January 2009. This parent education included one-on-one time with a parenting educator and classes at Fairfield County Job & Family Services. Fairfield County Job & Family Services closed appellant's case in the fall of 2008 so that another person could attend the one-on-one educator time.

**{¶8}** In February 2009, when Ms. Holtel and appellant reconnected, Ms. Holtel requested appellant get a mental health assessment before scheduling parenting classes. Ms. Holtel scheduled two intake sessions at New Horizons, but appellant never attended these sessions. FCCPS wanted to add appellant to Mid-Ohio's psychological evaluation list, but appellant refused, stating she was retarded and did not

want to do the test.  However, the agency was able to get the psychological evaluation completed on November 11, 2009.

{¶9}   FCCPS also attempted to schedule counseling for appellant. However, appellant was first living in Fairfield County, then Licking County, then Muskingum County.  Ms. Holtel followed up with the county counseling agencies.  Appellant had her intake completed at Muskingum Behavioral Health.  Her psychological evaluation took place on November 11, 2009. FCCPS received a copy of the evaluation prior to trial.  Ms. Holtel testified that the opinion of the FCCPS was appellant had not complied with this aspect of the case plan.

{¶10} Ms. Holtel testified that the case plan also required that appellant obtaining and maintaining stable housing and employment or financial means to provide for herself and N.B.  Housing was an issue because in the year leading up to the trial, appellant reported living with her brother in Licking County, with her boyfriend in Fairfield County, with another brother in Muskingum County, as well as living in Columbus during the time she disappeared in October 2008 to January 2009.  FCCPS offered appellant the Project House, but appellant declined because she did not want to live in Fairfield County.  At the time of trial, appellant was living in a one-bedroom apartment with her brother, his girlfriend, and their daughter who is approximately five years old.

{¶11} The third aspect of the case plan involved substance abuse and response to stressors.  The part of the case plan called for appellant to sign up for the SAM program, which manages random drug screens.  At the time of trial, appellant had not yet signed up for the SAM program.

{¶12} The agency screened appellant in October 2008 and she was negative for all illegal substances.  On September 14, 2009 and September 15, 2009, appellant tested positive for marijuana and amphetamines.  On October 12, 2009, appellant tested negative for all illegal substances.  On November 9, 2009 and November 10, 2009, appellant tested positive for marijuana.  Ms. Holtel testified that there have been multiple times where she asked appellant to take a drug screen, but appellant refused.  Ms. Holtel also testified that she referred appellant to the Recovery Center for intake, but the Recovery Center has no record of appellant contacting that agency.

{¶13} On the day of the trial, appellant's MySpace page was brought to FCCPS' attention.  On that page appeared a picture of appellant driving, and the caption under the picture is "F-ed up in this picture."  Appellant does not have her driver's license.  Appellant admitted using marijuana to celebrate her birthday.

{¶14} Ms. Holtel had a visitation referral to the agency's Visitation Center on October 2, 2008, but it was suspended when appellant could not be located.  Appellant completed orientation on February 27, 2009 and first visited N.B. on March 3, 2009.  At that point, appellant had not seen N.B. for four and a half months.

{¶15} Appellant had the opportunity to visit with N.B. for one hour each week.  In March 2009, appellant had four opportunities to visit, but only visited twice.  Appellant did not call to cancel, the two other visits.  In April 2009, appellant did not show up for, nor did she call to cancel, the visits. Because appellant had not contacted FCCPS for several of her scheduled visits, appellant's visitation privileges were terminated.

{¶16} Ms. Holtel made another referral to the Visitation Center, and appellant was able to visit N.B. on May 6, 2009. In May 2009, appellant visited N.B. during all four of her visit opportunities. However, in June 2009, she visited once. Appellant did not call to cancel the other three visits. Therefore, the Visitation Center again suspended appellant's visitation privileges.

{¶17} Appellant could not be located beginning in July 2009. Appellant neither visited N.B. nor had any contact with N.B. from June 23, 2009, through September 14, 2009. Visits did not begin again until September 2009. Appellant resumed visits with N.B., and attended the two remaining visits in September. In October 2009, there were two opportunities for visits, and appellant attended both. In November 2009, appellant attended four of the five visit opportunities. Ms. Holtel testified that in total, from October 2008 to the time of trial, appellant had 58 opportunities to visit N.B., but only visited 14 times.

{¶18} Ms. Holtel believes that there is a bond between appellant and N.B., but she cannot tell any difference between how N.B. acts with appellant and how she acts with all other women that are involved in the case. On the other hand, N.B. is noticeably attached to her foster family and the foster extended family. Ms. Holtel testified that N.B. has been with the same foster family since September 22, 2008.

{¶19} The trial was continued and resumed on February 9, 2010. At that time, Ms. Holtel updated the trial court on what occurred in reference to the case plan since December 1, 2009. Ms. Holtel testified that appellant had not yet attended parenting classes, although she had been trying to get services in Muskingum County. Appellant's housing had not changed since December; appellant was still living with

her brother, his girlfriend, and their daughter. Appellant reported to Ms. Holtel that she had started a job two weeks beforehand, working on a farm to clear out the lot. Ms. Holtel had not been able to verify employment.

{¶20} On January 25, 2010, appellant went to screen for drugs and/or alcohol, but she could not produce a urine sample. Ms. Holtel requested appellant screen for drugs and/or alcohol on February 1, 2010, but appellant did not submit to a screen stating that she had to work.

{¶21} Appellant informed Ms. Holtel that she had changed counselors and completed a new intake appointment with that counselor. Ms. Holtel had received the new intake report the previous day, which stated that appellant admitted to using marijuana daily, had a history of mood swings and hyperactivity, and had addictive behaviors. Appellant had eight opportunities to visit since the last day of trial, and attended seven visits.

{¶22} Appellant also testified at the trial in this case. Appellant confirmed that she was living with her brother and his girlfriend at the time of trial. Appellant believed that she would be able to find alternative housing in the next three to four months.

{¶23} Appellant admitted to telling her assessment counselor that she uses marijuana regularly. Appellant admitted to smoking marijuana every other night, but did not believe it was indicative of a drug problem. She reported that she had not smoked marijuana in three days, and believes that as soon as N.B. is returned to her, she would stop the drug use.

{¶24} Appellant admitted that she needs more help than the average person. However, she was not certain whether her family would help her or not if N.B. was returned to her.

{¶25} When N.B. was initially placed in foster care, she was extremely underweight and often threw up. Since being in foster care, N.B. has been diagnosed with Duane Syndrome, which causes her eyes to not focus. Her foster family has worked with Children's Hospital, putting drops in her eyes and getting her glasses to improve the situation. N.B. is currently in Help Me Grow services, and her foster family is working to get her in speech because she is not talking as she should. Appellant was informed of the dates and times for physical therapy, but did not attend any of the appointments. Duane Syndrome is a condition she will always have, and can lead to autism and similar conditions if left untreated.

{¶26} FCCPS attempted to place N.B. with biological family and has followed up with family members who had been suggested. A maternal uncle in Montgomery County was willing to take N.B. and had completed a home evaluation. However, he was offered a job out of state, and therefore withdrew from the case. An aunt called expressing interest in taking custody of N.B., but was not heard from after the initial phone call.

{¶27} N.B. has been in the temporary custody of Fairfield County Child Protective Services for twelve (12) or more months of a consecutive twenty-two (22) month period.

{¶28} Prior to conclusion of the case, the original case attorney for M.B. resigned from the practice of law. The trial court requested all parties submit Proposed

Findings of Fact/Conclusions of Law for the court's review. Current counsel was appointed to listen to the entire trial transcript and prepare Proposed Findings of Fact Conclusions of Law. By an entry prepared by the agency's attorneys, the court granted the agency's request for a permanent commitment to the agency on December 17, 2010.

{¶29} It is from this entry that the appellant-mother has appealed.

## II. Assignment of Error

{¶30} On appeal, mother asserts the following assignment of error:

{¶31} "I. THE DECISION OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF APPELLANT'S CHILD TO FAIRFIELD COUNTY PROTECTIVE SERVICES WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE, AS THE RECORD DOES NOT CONTAIN CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST AND THAT THE CHILD CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME."

## A. Burden Of Proof

{¶32} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, quoting *Stanley v. Illinois* (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re: Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45.

Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

**{¶33}** An award of permanent custody must be based upon clear and convincing evidence, R.C. 2151.414(B) (1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.

### B. Standard of Review

**{¶34}** Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *In re Myers III,* Athens App. No. 03CA23, 2004-Ohio-657, ¶ 7, citing *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. *In re Ohler,* Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

### III. Requirements for Permanent Custody Awards

**{¶35}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶36} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶37} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.

A.    Parental Placement within a Reasonable Time-

R.C. 2151.414(B) (1) (a).

{¶38} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed

with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow* (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1997 WL 701328; *In re: Butcher* (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.

{¶39} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

{¶40} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

**{¶41}** "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

**{¶42}** "***

**{¶43}** "(16) Any other factor the court considers relevant."

**{¶44}** R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E) (7) to (11) apply.

**{¶45}** In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(B) (1) (a). The trial court found that the evidence established that N.B. could not be placed with appellant-mother within a reasonable period and should not be placed with her.

**{¶46}** As set forth in our Statement of Facts supra the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the Guardian ad Litem for the child, and the testimony of several witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

**{¶47}** Ms. Holtel testified with respect to the steps FCCPS had taken to assist appellant and with respect to the lack of follow through appellant had exhibited with various aspects of her case plan. Specifically, appellant disappeared for significant periods of time, was not attending the vast majority of visits, did not obtain her own housing, did not attend any parenting classes, did not attend counseling or obtain drug treatment, did not comply with drug screens, and did not obtain adequate employment.

**{¶48}** The child loves her mother and the mother loves her child and has developed a bond. The evidence demonstrated the successful efforts appellant-mother had made in the case to regain custody of her child. On that point, the evidence demonstrates that any improvement the appellant-mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of appellant's compliance with aspects of his case plan, she was still not able to be a successful parent to her daughter.

**{¶49}** In the case of *In re: Summerfield*, Stark App. No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶50}** Based upon the foregoing, as well as the entire record in this case, the Court properly found the child could not or should not be returned to the appellant-mother within a reasonable time. Despite offering numerous services, the appellant-mother was unable to mitigate the concerns that led to the child's removal.

### B. The Best Interest of the Child.

**{¶51}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶52}** The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal* (1994), 95 Ohio App.3d 309, 315. A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

**{¶53}** The trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children* (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

**{¶54}** As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App. No. CA-5758. "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller* (1988), 37 Ohio St. 3d 71.

{¶55} In the case at bar, the evidence established that N.B. has a bond with her foster family. N.B. has been in the temporary custody of Fairfield County Child Protective Services for twelve (12) or more months of a consecutive twenty-two (22) month period. Appellant does not have stable housing or employment. N.B. has been diagnosed with Duane Syndrome. Appellant does not have a driver's license and so would be unable to meet N.B.'s particular medical needs.

{¶56} N.B. is too young to be capable of expressing her wishes, however the Guardian ad Litem expressed her opinion that it was in the best interest of N.B. for permanent custody to be granted to FCCPS.

{¶57} Based on the evidence submitted at trial, the court properly determined the best interest of the child would be served by the grant of permanent custody to FCCPS.

## III. Conclusion

{¶58} For these reasons, we find that the trial court's determination that appellant-mother had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with her within a reasonable time or should not be placed with her was not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to FCCPS was in the child's best interest was not against the manifest weight or sufficiency of the evidence.

**{¶59}** Appellant's sole assignment of error is overruled.

**{¶60}** The judgment of the Fairfield County Court of Common Pleas, Juvenile Division is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

WSG:clw 0418

[Cite as *In re N.B.*, 2011-Ohio-2170.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN RE: N.B.                                      :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :          JUDGMENT ENTRY
                                                 :
                                                 :
                                                 :
                                                 :          CASE NO. 2011-CA-6

        For the reasons stated in our accompanying Memorandum-Opinion, the

judgment of the Fairfield County Court of Common Pleas, Juvenile Division is affirmed.

Costs to appellant.

                                    _____
                                    HON. W. SCOTT GWIN


                                    _____
                                    HON. WILLIAM B. HOFFMAN


                                    _____
                                    HON. SHEILA G. FARMER